1  ABIGAIL SLATER
   Assistant Attorney General, Antitrust Division
2  PATRICK HALLAGAN (Ill. Bar. No. 6269887)
   MELANIE KREBS-PILOTTI (Cal. Bar. No. 241484)
3  Trial Attorneys, Antitrust Division
        Washington Criminal Section
4       450 5th Street, N.W.
        Washington, D.C. 20530
5       Mobile:   (202)476-0490
        E-mail:   F.Patrick.Hallagan@usdoj.gov
6
   Attorneys for Plaintiff
7  UNITED STATES OF AMERICA

```
                  FILED
          CLERK, U.S. DISTRICT COURT

          01/22/2026

       CENTRAL DISTRICT OF CALIFORNIA
       BY: ____AP____ DEPUTY
```

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,       No. CR [ ]  5:26-cr-00013-SSS

11          Plaintiff,              DEFERRED PROSECUTION AGREEMENT
                                    FOR DEFENDANT EBLOCK CORPORATION
12            v.

13  EBLOCK CORPORATION,             Violations: 15 U.S.C. § 1
                                                18 U.S.C. § 1343
14          Defendant.

15

16              **DEFERRED PROSECUTION AGREEMENT**

17      The United States Department of Justice, Antitrust Division

18  ("United States") and EBLOCK CORPORATION (the "Company"), a

19  corporation organized and existing under the laws of Delaware, by and

20  through its undersigned representative, pursuant to authority granted

21  by its board of directors, enter into this Deferred Prosecution

22  Agreement ("Agreement"), the terms and conditions of which are as

23  follows:

24          **Criminal Information and Acceptance of Responsibility**

25      1.   The Company acknowledges and agrees that the United States

26  will file a two-count Information in the United States District Court

27  for the Central District of California. The Information will charge

28

the Defendant with entering into and engaging in a combination and
conspiracy – through individuals who became employees as a result of
an asset acquisition – to suppress competition by rigging bids and
pooling profits in online used vehicle auctions, in violation of the
Sherman Antitrust Act, 15 U.S.C. § 1, and for engaging – through
individuals who became employees as a result of an asset acquisition
– in deceitful bidding practices, in violation of 18 U.S.C. § 1343.
In so doing, the Company: (a) knowingly and voluntarily waives its
right to indictment on these charges, as well as all rights to a
speedy trial pursuant to the Sixth Amendment to the United States
Constitution, Title 18, U.S. Code, Section 3161, and Federal Rule of
Criminal Procedure 48(b); and (b) knowingly and voluntarily waives
for the purposes of this Agreement and for the purposes of any
charges by the United States arising out of the conduct described in
the Statement of Facts (attached as Attachment A and incorporated by
reference into this Agreement) any objection with respect to venue
and consents to the filing of the Information, as provided under the
terms of this Agreement, in the United States District Court for the
Central District of California. The United States agrees to defer
prosecution of the Company pursuant to the terms and conditions
described below.

2.    The Company admits, accepts, and acknowledges that, under
U.S. federal law, it is responsible for the acts of its officers,
directors, and employees that give rise to the charges in the
Information. The Company admits, accepts, and acknowledges that the
facts set forth in the Statement of Facts are true and accurate.
Should the United States pursue the prosecution that is deferred by

this Agreement, the Company agrees that it will not dispute the Statement of Facts set forth in this Agreement, and, in any such prosecution by the United States, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing or other hearing by the United States. In addition, the Company agrees not to assert any claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines"), or any other federal rule that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form in any prosecution or hearing by the United States. Neither this Agreement nor the Information is a final adjudication of the matters addressed in those documents.

### Parties to and Scope of the Agreement

3.    The Company is organized under the laws of Delaware. Its parent company is headquartered in Toronto, Canada. This Agreement binds only the Company and the United States Department of Justice, Antitrust Division ("United States").

### Length of the Agreement

4. This Agreement is effective for a period beginning on the date on which the Information is filed (the "Effective Date") and ending one year after the Effective Date, (the "Term"), except for the Cooperation Obligations set forth in Paragraph 6 below and the payment obligations set forth in Paragraph 8 below. The Company

agrees that in the event that the United States determines, in its sole discretion, that the Company has violated any provision of this Agreement, an extension or extensions of the Term of the Agreement may be imposed by the United States, in its sole discretion, for up to a total additional time period of one-half year, without prejudice to the United States' right to proceed as provided in Paragraphs 17–21 below. Any extension of the Agreement extends all terms of this Agreement, including attachments, for an equivalent period, but does not extend the due date for payments provided in Paragraph 8 below.

### Relevant Considerations

5. The United States enters into this Agreement based on the individual facts and circumstances of this case, including:

(a)  That the Company inherited the problem conduct in an acquisition of assets ("Company A") via a multi-step transaction in California in November 2020 during Covid; Covid prevented travel from Canada, where the Company's parent and executives are located, to the United States and hampered due diligence and integration;

(b)  The problem conduct was carried out by Company A employees who joined the Company through the acquisition in November 2020 on a separate auction platform not under the Company's control until Company A's auctions were migrated to the Company's auction platform on July 12, 2021;

(c)  The Company was not aware of the problem conduct taking place at Company A until on or about January 2021. The Company rejected the problem conduct, did not install the functionality

that facilitated the conduct from Company A's platform onto the Company's platform, and took concrete steps to stop the problem conduct. But, Company A's legacy employees intentionally hid their continued problem conduct, making it difficult for the Company to stop it.

(d)  Upon being alerted to the United States' investigation, the Company timely cooperated with the United States, including producing all requested documents, data, answering all questions from the United States about the documents and data, and making current employees of the Company available for voluntary interviews. The Company has further agreed to cooperate with the Antitrust Division, as provided in Paragraph 6 below. The Company's cooperation will aid the United States' prosecution of other non-Company-employed individuals and companies not yet charged.

(e)  By the end of 2023, financial strains on the Company caused the Company to cease selling on its platform in the eastern United States, Northern California, Oregon, and Arizona.

(f)  The Company has committed to continuing to enhance its compliance program and internal controls, including by ensuring that its compliance program will satisfy the minimum elements set forth in Attachment C to this agreement, and by conducting specific antitrust training for Company employees; and

(g)  This Agreement can ensure that integrity continues to be a focus of the Company's operations and preserve its financial viability while preserving the United States' ability to prosecute it should material breaches occur.

1

**Cooperation and Disclosure Obligations**

2      6. The Company shall cooperate fully and truthfully with the

3  United States in any and all matters relating to the current federal

4  criminal investigation into violations of federal antitrust and

5  related criminal laws involving online auctions for used vehicles,

6  including the conduct described in this Agreement and the attached

7  Statement of Facts, and other conduct under criminal investigation

8  directly relating to conduct described in this Agreement and the

9  attached Statement of Facts by the United States at any time during

10 the Term, until the later of the date upon which all criminal

11 investigations and prosecutions arising out of such conduct are

12 concluded, or the end of the Term specified in Paragraph 4

13 (collectively "Federal Criminal Proceeding"). Federal Criminal

14 Proceeding also includes, but is not limited to, any investigation,

15 prosecution, litigation, or other proceeding regarding obstruction

16 of, the making of a false statement or declaration in, the commission

17 of perjury or subornation of perjury in, the commission of contempt

18 in, or conspiracy to commit such offenses in any Federal Criminal

19 Proceeding. The Company agrees that full, truthful, and continuing

20 cooperation pursuant to this Paragraph will include, but not be

21 limited to, the following:

22     (a)   producing to the United States all EBlock Corporation

23         documents, information, and other materials, wherever located,

24         not protected under the attorney-client privilege or the work-

25         product doctrine, in the possession, custody, or control of the

26         Company, that are requested by the United States in its sole

27         discretion, so long as not unreasonably burdensome, in

28

connection with any Federal Criminal Proceeding or the payment
of victim compensation pursuant to this Agreement, as well as
providing to the United States a log of any responsive
documents, information, and other materials that were not
provided, including an explanation of the basis for withholding
the materials, and bearing the burden of establishing the
validity of any such an assertion;

(b)    using best efforts to secure the full, truthful, and
continuing cooperation of current and certain former officers,
directors, and employees of the Company, as may be requested by
the United States in its sole discretion, except that the
Company will not have an obligation to secure the cooperation of
former employees of Company A who are no longer employed by EBlock,
of any individuals associated with Company B, nor of any
whistleblowers (together "Excluded Individuals"). Such efforts will
include, but not be limited to, making these persons available in the
United States and at other mutually agreed-upon locations at the
Company's expense for interviews and the provision of testimony
in grand jury, trial, and other judicial proceedings in
connection with the Federal Proceeding.

7.    In addition to the Cooperation Obligations described above,
during the Term of the Agreement, should the Company learn of or
possess any evidence or allegation of conduct that the Company
reasonably believes may constitute a federal criminal offense *or* a
federal criminal antitrust offense or another federal criminal
offense affecting the competitive process by the Company, or by any
present or former officers, directors, or employees during their

1    employment at the Company, the Company shall promptly report such

2    evidence or allegations to the United States. Any information that

3    the Company thus discloses to the United States likely will include

4    proprietary, financial, confidential, and competitive business

5    information. Public disclosure of the information and reports could

6    discourage cooperation, impede pending or potential government

7    investigations, and thus undermine the United States' objectives in

8    obtaining such reports. For these reasons, among others, the

9    information and reports and the contents thereof are intended to

10   remain and shall remain nonpublic, except as otherwise agreed to by

11   the parties in writing, or except to the extent that the United

12   States determines in its sole discretion that disclosure would be in

13   furtherance of its discharge of its duties and responsibilities or is

14   otherwise required by law.

15                              **Monetary Penalty**

16        8. The United States and the Company agree that the Company will

17   pay a monetary penalty in the amount of $3,280,000. The United States

18   and the Company agree that this penalty is appropriate given the

19   facts and circumstances of this case, including the Relevant

20   Considerations described in Paragraph 5. While the Company retains

21   the option to pay the monetary penalty in full at any time during the

22   Term, the Company must make incremental payments in at least the

23   following amounts on the following schedule: $1 million within 4

24   business days of the filing of this Agreement with the Court; with

25   the balance paid in two equal payments of $1,140,000 over the

26   following two years: the first on or before January 4, 2027, and the

27

28

second on or before January 3, 2028.[1] The United States agrees that it will not seek additional payment from the Company in the Information, meaning there is no additional money owed via restitution, fine, or forfeiture in the Information. This paragraph, including the Company's payment obligations, shall survive the Term of the Agreement and remain in effect until the Company has paid the monetary penalty in full. The Company acknowledges that any failure to make a scheduled payment as set forth in this paragraph constitutes a material breach of this Agreement pursuant to Paragraphs 17-21. In the event of such a breach, the United States may, in its sole discretion, reinstate the Information and prosecute the Company in accordance with the terms of this Agreement and Paragraphs 17-21.

9. The penalty set forth in Paragraph 8 is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the United States that $3,280,000 is the maximum penalty that may be imposed in any future prosecution in the event of a breach of this Agreement, and the United States is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the United States agrees that under those circumstances, it will recommend to the Court that the penalty paid under this Agreement should be offset against any criminal fine the Court imposes as part of a future judgment. The Company acknowledges that no tax deduction may be sought, and agrees that no tax deduction will be sought, in the United States or elsewhere in connection with

---

[1] Because the 2028 payment will be made after expiration of the DPA, the United States will provide an appropriate account for payment prior to January 4, 2028.

1  the payment of any part of this penalty.

2  **Conditional Release from Liability**

3      10.   In return for the full and truthful cooperation of the

4  Company as described in Paragraph 6, and compliance with all other

5  terms and conditions of this Agreement:

6      (a)   The United States agrees that, except as provided by this

7      Agreement, it will not bring criminal charges against the

8      Company for any act or offense committed before the Effective

9      Date, involving the Company's entry into and engagement in a

10     combination and conspiracy to suppress competition by rigging

11     bids and pooling auction profits, in violation of 15 U.S.C. § 1,

12     and its involvement in deceitful bidding practices, in violation

13     of 18 U.S.C. § 1343 and releases any claim on or related to

14     these facts;

15     (b)   Failure by the Company to comply fully with the Cooperation

16     Obligations under Paragraph 6 that is not cured pursuant to

17     Paragraph 18 will void the United States' agreement in Paragraph

18     10(a), and the Company may be prosecuted criminally for any

19     federal crime of which the United States has knowledge; and

20     (c)   The United States' agreement in Paragraph 10(a) does not

21     apply to subornation of perjury (18 U.S.C. § 1622), false

22     statements (18 U.S.C. § 1001), obstruction of justice (18 U.S.C.

23     § 1503 *et seq.*), contempt (18 U.S.C. §§ 401–402), or conspiracy

24     to commit such offenses. Its agreement in Paragraph 10(a) also

25     does not apply to civil matters of any kind, any civil or

26     criminal violation of the federal tax or securities laws or

27     conspiracy to commit such offenses, or any crimes of violence.

28

**Related Administrative Proceedings**

11.  The Company understands that it may be subject to suspension or debarment action by state or federal agencies based upon this Agreement, and that this Agreement in no way controls what action, if any, other agencies may take. However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation and remediation of the Company as a matter for that agency to consider before determining what action, if any, to take. By agreeing to provide this information to such agencies, the United States is not agreeing to advocate on behalf of the Company but rather is agreeing to provide facts to be evaluated independently by such agencies.

**Corporate Compliance Program**

12.  In light of the conduct described in the Information and in the Statement of Facts, the Company represents that it has conducted a review of its compliance program and is implementing, and will continue to implement, compliance controls reasonably designed to prevent and detect similar antitrust violations in the future.

13.  The Company represents that it will make best efforts to implement a compliance and ethics program reasonably designed to prevent and detect antitrust violations throughout the Company's operations.

14.  The Company further represents that it will continue to periodically review its antitrust compliance program and make any necessary adjustments and updates based on changes in the Company's operations, circumstances, legal developments, and industry

11

1  practices.

2                      **Deferred Prosecution**

3       15.  In consideration of the undertakings agreed to herein by

4  the Company, the United States agrees that any prosecution of the

5  Company for the conduct set forth in the Statement of Facts be and

6  hereby is deferred for the Term. To the extent there is conduct

7  disclosed by the Company, pursuant to Paragraph 7, that is not set

8  forth in nor arising from the conduct described in the Statement of

9  Facts, such conduct will not be exempt from further prosecution and

10  is not within the scope of or relevant to this Agreement.

11      16.  The United States further agrees that if the Company fully

12  complies with all obligations under this Agreement, the United States

13  will not continue the criminal prosecution of the offenses described

14  in Paragraph 1 of the Agreement and, at the conclusion of the Term,

15  this Agreement shall expire, except for the Cooperation Obligations

16  set forth in Paragraph 6 of the Agreement. Within thirty (30) days of

17  the Agreement's expiration, the United States shall seek dismissal

18  without prejudice of the Information described in Paragraph 1 of the

19  Agreement, and shall further request that the dismissal be converted

20  to dismissal with prejudice once the payment terms described in

21  Paragraph 8 are fully satisfied.

22                      **Breach of Agreement**

23      17.  If, during the Term of this Agreement, the Company

24  (a) commits any felony offense under U.S. federal law; (b) provides

25  to the United States deliberately false, incomplete, or misleading

26  information, including in connection with its disclosure of

27  information about individual culpability; (c) fails to satisfy any

28

Cooperation Obligations as set forth in Paragraph 6 of this Agreement; (d) fails to satisfy the requirements set forth in Attachment D; or (e) otherwise fails to completely perform or fulfill any of the Company's obligations under this Agreement, regardless of whether the United States becomes aware of such a breach after the Term is complete, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the United States has knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the United States in the United States District Court for the Central District of California or any other appropriate venue. Determination of whether the Company has breached this Agreement and whether to pursue prosecution of the Company shall be in the United States' sole discretion. Any such prosecution may be premised on information provided by any source, including but not limited to the Company. Any such prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the United States prior to the date of the signing of this Agreement that is not time-barred by the applicable statute of limitations on the Effective Date of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations between the Effective Date and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the Effective Date of this Agreement shall be tolled for the duration of the Term plus one year.

18. In the event the United States determines that the Company

13

has breached this Agreement in any respect, the United States agrees to provide the Company with written notice of such breach prior to instituting any prosecution resulting from any such breach. Within thirty (30) days of receipt of such notice, the Company shall have the opportunity to respond to the United States in writing to explain the nature and circumstances of such breach, as well as the actions the Company has taken to address and remediate the situation, which the United States shall consider in determining whether to pursue prosecution of the Company.

19.  In the event that the United States determines that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the United States or to the Court, including the Statement of Facts, and any testimony given by any individual before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the United States against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether any conduct or statement of any current or former director, officer, or employee, or any person acting on behalf of, or at the direction of, the Company, will be imputed to the Company for the purpose of determining whether

the Company has violated any provision of this Agreement shall be in the sole discretion of the United States.

20.  The Company acknowledges that the United States has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment. The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

21.  On the date that the period of deferred prosecution specified in this Agreement expires, as set forth in Attachment E, the Company, by its President and Chief Executive Officer, will certify to the United States that the Company has met the disclosure obligations set forth in Paragraph 6 of this Agreement. Each certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

### Sale, Merger, or Other Change in Corporate Form

22.  The Company agrees that, during the Term, if it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Company's consolidated operations in the United States, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, or transfer, it shall provide notice to the United States at least thirty (30) business days prior to undertaking any such sale, merger, transfer, or other change in corporate form.

15

1  If at any time during the Term or prior to completing full payment of
2  the penalty the Company engages in a transaction(s) that has the
3  effect of circumventing or frustrating the purposes of this Agreement
4  or payment of the penalty, the United States may deem it a breach
5  pursuant to Paragraphs 17-21 of this Agreement. Nothing herein shall
6  restrict the Company from indemnifying (or otherwise holding
7  harmless) the purchaser or successor in interest for penalties or
8  other costs arising from any conduct that may have occurred prior to
9  the date of the transaction(s), so long as such indemnification does
10 not have the effect of circumventing or frustrating the purposes of
11 this Agreement or payment of the penalty, as determined by the United
12 States in its sole discretion.

**Public Statements by the Company**

14 23.  The Company expressly agrees that it shall not, through
15 present or future attorneys, officers, directors, employees, or any
16 other person authorized to speak for the Company, make any public
17 statement, in litigation or otherwise, contradicting the acceptance
18 of responsibility by the Company set forth above or as described in
19 the Statement of Facts. Any such contradictory statement shall,
20 subject to cure rights of the Company described below, constitute a
21 breach of this Agreement, and the Company thereafter shall be subject
22 to prosecution as set forth in Paragraphs 17-21 of this Agreement.
23 The decision whether any public statement by any such person
24 contradicting a fact contained in the Statement of Facts will be
25 imputed to the Company for the purpose of determining whether it has
26 breached this Agreement shall be at the sole discretion of the United
27 States. If the United States determines that a public statement by

any such person contradicts in whole or in part a statement contained in the Statement of Facts, the United States shall so notify the Company, and the Company may avoid a breach of this Agreement by publicly repudiating such statement(s) within five (5) business days after notification. The Company shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, or employee of the Company in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual has been authorized by the Company to speak on behalf of the Company.

24.   The Company agrees that if the Company issues a press release, makes a required disclosure, or holds any press conference in connection with this Agreement, the Company shall first consult the United States to determine: (a) whether the text of the release, required disclosure, or proposed statements at the press conference are true and accurate with respect to matters between the United States and the Company; and (b) whether the United States has any objection to the release, disclosure or proposed statements. The United States shall respond to such inquiry by the Company within ten (10) days to agree on the release, disclosures, or proposed statements.

### Limitations on Binding Effect of Agreement

25.   This Agreement is binding on the Company and the United

17

States Department of Justice, Antitrust Division, but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities. If the court refuses to grant exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(2), all the provisions of this Agreement shall be deemed null and void, and the Term shall be deemed to have not begun, except that the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts shall be tolled from the date on which this Agreement is signed until the date the Court refuses to grant the exclusion of time plus six months, and except for provisions the contained within Paragraph 2 of this Agreement.

**Notice**

26.  Any notice to the United States under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Ryan Tansey, Chief, Washington Criminal Section, Antitrust Division, U.S. Department of Justice, 450 Fifth Street NW, Washington, DC 20530. Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Legal Counsel, EBlock Corporation, 10 Lower Spadina Avenue, Suite 400, Toronto, Ontario, Canada M5V 2Z2. Notice shall be effective upon actual receipt by the United States or the Company.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Entirety of Agreement**

27.  This Agreement, including its Attachments, sets forth all the terms of the agreement between the Company and the United States. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the United States, the attorney(s) for the Company, and a duly authorized representative of the Company.

Date: January 22, 2026

Respectfully submitted,

By: _____
JASON MCCLENAHAN
President and Chief Executive Officer
EBLOCK CORPORATION

By: _____
PATRICK HALLAGAN
MELANIE KREBS-PILOTTI
Trial Attorneys
United States Department of
Justice
Antitrust Division

1

**EBLOCK - COMPANY OFFICER'S CERTIFICATE**

2    I have read the Deferred Prosecution Agreement ("Agreement") and

3    carefully reviewed every part of it with outside counsel for EBLOCK

4    CORPORATION (the "Company"). I understand the terms of this Agreement

5    and voluntarily agree, on behalf of the Company, to each of its

6    terms. Before signing this Agreement, I consulted outside counsel for

7    the Company. Counsel fully advised me of the rights of the Company,

8    of possible defenses, of the Sentencing Guidelines' provisions, and

9    of the consequences of entering into this Agreement.

10    I have carefully reviewed the terms of this Agreement with the

11    Board of Directors of the Company. I have advised and caused outside

12    counsel for the Company to advise the Board of Directors fully of the

13    rights of the Company, of possible defenses, of the Sentencing

14    Guidelines' provisions, and of the consequences of entering into the

15    Agreement.

16    No promises or inducements have been made other than those

17    contained in this Agreement. Furthermore, no one has threatened or

18    forced me, or to my knowledge any person authorizing this Agreement

19    on behalf of the Company, in any way to enter into this Agreement. I

20    am also satisfied with outside counsel's representation in this

21    matter. I certify that I am the President and Chief Executive Officer

22    for the Company and that I have been duly authorized by the Company

23    to execute this Agreement on behalf of the Company.

24    Date: January 22, 2026

25

26    By: _____
      JASON MCCLENAHAN
27    President and Chief Executive Officer
      EBLOCK CORPORATION

28

1                    **CERTIFICATE OF COUNSEL**

2       I am counsel for EBLOCK CORPORATION (the "Company") in the matter

3  covered by the Deferred Prosecution Agreement ("Agreement"). In

4  connection with such representation, I have examined relevant Company

5  documents and have discussed the terms of this Agreement with the

6  Company Board of Directors. Based on our review of the foregoing

7  materials and discussions, I am of the opinion that the

8  representative of the Company has been duly authorized to enter into

9  this Agreement on behalf of the Company and that this Agreement has

10  been duly and validly authorized, executed, and delivered on behalf

11  of the Company and is a valid and binding obligation of the Company.

12  Further, I have carefully reviewed the terms of this Agreement with

13  the Board of Directors and the President/Chief Executive Officer of

14  the Company. I have fully advised them of the rights of the ˜

15  of possible defenses, of the Sentencing Guidelines' provisions and of

16  the consequences of entering into this Agreement. To my knowledge,

17  the decision of the Company to enter into this Agreement, based on

18  the authorization of the Board of Directors, is an informed and

19  voluntary one.

20

21  Date: January 22, 2026
        _____

22

23  By: _____
    WENDELYNNE J. NEWTON
24  JASON P. BOLOGNA
    CARRIE G. AMEZCUA
25  Buchanan Ingersoll & Rooney PC
    Counsel for EBLOCK CORPORATION
26

27

28

                            21

1

**Attachment A: Statement of Facts**

2      The following Statement of Facts is incorporated by reference as

3 part of the Deferred Prosecution Agreement ("Agreement") between the

4 United States Department of Justice, Antitrust Division ("United

5 States") and EBLOCK CORPORATION ("EBLOCK"). EBLOCK hereby agrees and

6 stipulates that the following information is true and accurate. Prior

7 to November 20, 2020, EBLOCK, a corporation organized and existing

8 under the laws of Delaware, with its parent company located in

9 Canada, was engaged in physical auctions of used vehicles in the

10 eastern United States. Through a multi-step transaction in California

11 in November 2020 during Covid, EBLOCK acquired the assets of Company

12 A. Due to Covid, EBLOCK executives were not able to travel to the

13 United States to conduct due diligence, meet the potential new

14 employees, or facilitate integration, and instead relied on a

15 management agreement to run day-to-day operations. Company A was an

16 auction company that provided a digital platform for sellers to put

17 their vehicles up for auction to commercial buyers in the Central

18 District of California. After the acquisition, EBLOCK retained

19 certain former Company A employees, including its CEO, district

20 managers, and operations managers, and many of those employees

21 continued to work at EBLOCK, in the Central District of California,

22 for a year or more after the acquisition. Company A continued hosting

23 online auctions on its separate, third-party hosted auction platform

24 until July 12, 2021, when Company A migrated to using the EBLOCK

25 auction platform. Prior to EBLOCK's acquisition of Company A assets,

26 Company A employees had been engaged in a long-standing conspiracy

27 with Individual B, the owner of Company B, a used auto wholesale

28

company. As alleged by the United States, beginning at least as early as October 2015, Company A employees conspired with Company B and Individual B to manipulate online auctions of used vehicles, in violation of the Sherman Act, 15 U.S.C. § 1, and engaged in material misrepresentations to place shill bids, bids placed for the purpose of artificially increasing bid prices, in violation of 18 U.S.C. § 1343. The United States has determined that, for the purpose of forming and carrying out the charged combination and conspiracy and wire fraud, Company A, did those things that they combined and conspired to do, including, among other things:

(a)   Allocated placement of bids with Company B;

(b)   Exchanged bid information with Company B, including the maximum amount Company A or Company B would bid on vehicles;

(c)   Provided special access and user permissions to Company B, enabling Company B to see the confidential bidding information of other buyers and sellers on the auction site;

(d)   Maintained a shared inventory of vehicles with Company B consisting of vehicles Company A or Company B purchased during Company A's auctions.

(e)   Coordinated with Company B to place shill bids, with the intention of artificially increasing the prices paid by legitimate buyers;

(f)   Misrepresented the numbers of bidders during online auctions by commissioning the development of software that would automatically place shill bids at set time intervals;

(g)   Misrepresented the identities of bidders by placing shill bids under the names of actual auto dealerships without those

1    dealerships' consent; and

2    (h)    Pooled and split profits with Company B for vehicles

3    purchased and re-sold during the course of the conduct.

4    The facts detailed above in subparagraphs (a) – (h) were all

5   unknown by EBLOCK when it acquired the assets of Company A on

6   November 20, 2020.  In or around January 21, 2021, EBLOCK executives

7   first learned about coordinated bidding activity between Company A

8   and Company B, which included an automated shill bidding

9   functionality on Company A's platform.  EBLOCK refused to incorporate

10  that functionality into the EBLOCK platform for the migration on July

11  12, 2021. EBLOCK and its executives had no intention of continuing

12  the conduct initiated by Company A and Company B pre-acquisition, and

13  tried to stop the conduct outlined above, including by not giving

14  Individual B special access to the EBLOCK platform, taking steps to

15  end, and in fact ending, the profit sharing agreement, and tracking

16  down the dealer names that Individual B was using to cover up the

17  fake bids. But despite the ongoing efforts of EBlock executives and

18  employees, legacy Company A employees continued to pursue certain

19  conduct with Company B and Individual B post migration, including,

20  among other things, using other dealer names to cover up and hide

21  Individual B's fake bids, and continuing to give Individual B

22  information about the vehicles outside of the controls on EBLOCK's

23  platform, all to hide their continued conduct from EBLOCK. EBLOCK did

24  not condone the conduct and took steps to stop it, and due to

25  EBLOCK's efforts, the conduct decreased after July 12, 2021, with

26  bids from fake dealers dropping significantly. But because legacy

27  Company A employees intentionally hid their on-going conduct, it was

28

not completely ended until February 2022. Further, the parties agree the factual summary reflects that, although EBLOCK did not stop the conduct immediately, the conduct stopped because EBLOCK's repeated efforts made it stop. The United States has determined that the purchases and sales affected by the charged offenses attributable to Company A legacy employees working for EBLOCK totaled approximately $16,240,000. The penalty under this Agreement does not purport to quantify any individual damages or harm to an individual dealer and represents only the amount the Company has agreed with the United States to pay, and is not intended as a conclusion as to antitrust injury as that concept is interpreted in civil antitrust law.

EBLOCK owned and operated online auction platforms for used vehicles, and vehicles listed for auction were routinely sold. Acts in furtherance of this conspiracy and wire fraud were carried out within the Central District of California. The communications described above took place in this District and elsewhere and were transmitted by means of wire communication in interstate commerce, and the vehicles that were the subject of the charged conspiracy were sold or purchased by one or more of the conspirators to commercial buyers located in this District and elsewhere.

1          **Attachment B: Certificate of Corporate Board Resolutions**

2          WHEREAS, EBLOCK CORPORATION (the "Company") has been engaged in

3    discussions with the United States Department of Justice, Antitrust

4    Division ("United States") regarding issues arising in relation to the

5    conduct described in Attachment A; and

6          WHEREAS, in order to resolve such discussions, it is proposed that

7    the Company enter into a Deferred Prosecution Agreement with the

8    United States dated January 22, 2026 ("Agreement"); and

9          WHEREAS, the Company's President and Chief Executive Officer,

10   Jason McClenahan together with outside counsel for the Company, have

11   advised the Board of Directors of the Company of its rights, possible

12   defenses, the Sentencing Guidelines' provisions, and the consequences

13   of entering into such Agreement with the United States;

14         Therefore, the Board of Directors has RESOLVED that:

15         1.   The Company (a) acknowledges the filing of the two-count

16   Information charging the Company with rigging bids and pooling

17   profits, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1,

18   and deceitful bidding practices, in violation of 18 U.S.C. § 1343;

19   (b) waives indictment on such charges and enters into the Agreement

20   with the United States; and (c) agrees to pay a monetary penalty in

21   the amount of $3,280,000 with respect to the conduct described in

22   Attachment A;

23         2.   The Company accepts and will comply with all of the terms and

24   conditions contained in the Agreement and its attachments;

25         3.   The President and Chief Executive Officer of Company, Jason

26   McClenahan, is hereby authorized, empowered and directed, on behalf

27   of the Company, to execute the Agreement substantially in such form

28

                                        26

1 | as reviewed by this Board of Directors at this meeting with such

2 | changes as the President and Chief Executive Officer of Company,

3 | Jason McClenahan, may approve;

4 |     4. The President and Chief Executive Officer of Company, Jason

5 | McClenahan, is hereby authorized, empowered and directed to take any

6 | and all actions as may be necessary or appropriate and to approve the

7 | forms, terms or provisions of any agreement or other documents as may

8 | be necessary or appropriate, to carry out and effectuate the purpose

9 | and intent of the foregoing resolutions; and

10 |     5. All of the actions of the President and Chief Executive

11 | Officer of Company, Jason McClenahan, which actions would have been

12 | authorized by the foregoing resolutions except that such actions were

13 | taken prior to the adoption of such resolutions, are hereby severally

14 | ratified, confirmed, approved, and adopted as actions on behalf of

15 | the Company.

16 |

17 | Date: January 22, 2026

18 |

19 | By: _____

20 | Corporate Secretary
EBLOCK CORPORATION

1

**Attachment C: Corporate Compliance Program**

2       As part of the Deferred Prosecution Agreement between EBLOCK

3  CORPORATION (the "Company") and the United States Department of

4  Justice, Antitrust Division ("United States") dated January 22, 2026

5  ("Agreement"), and to address any deficiencies in the Company's

6  compliance program, including its policies, procedures, and internal

7  controls relating to compliance with the Sherman Antitrust Act and

8  other applicable antitrust laws and regulations, the Company agrees

9  to continue to conduct, in a manner consistent with all of the

10  Company's obligations under this Agreement, appropriate reviews of

11  its existing policies, procedures, and internal controls.

12       Where necessary and appropriate, the Company agrees to adopt a

13  compliance program, including compliance policies and procedures

14  reasonably designed to ensure the prevention and detection of

15  antitrust violations. At a minimum, the Company will make its best

16  efforts to include, but not be limited to, the following elements:

17       *1.  Design and Comprehensiveness*. The Company has or will develop

18  compliance policies and procedures reasonably designed to prevent

19  antitrust violations. The policies and procedures should be

20  integrated into the Company's business practices and reinforced

21  through appropriate internal controls specifically tailored to the

22  Company's business, taking into account the Company's size and

23  resources. The Company shall notify all employees that compliance

24  with the policies and procedures is the duty of individuals at all

25  levels of the company.

26       2.  *Culture of Compliance.* The Company's senior leadership as a

27  whole, through words and actions, will work to foster a culture of

28

compliance throughout the organization. Senior leadership across the organization will be a model for the Company's antitrust compliance.

3. *Responsibility for the Compliance Program.* The Company will assign responsibility to one or more senior leaders in the company with sufficient background and competence in antitrust law, working with outside counsel as necessary, for the implementation and oversight of the antitrust compliance program. Those responsible for the Company's antitrust compliance program will be provided with sufficient autonomy, authority, and seniority within the Company's governance structure to effectuate the compliance program.

4. *Periodic Risk-Based Reviews.* The Company will conduct periodic antitrust risk assessments, taking into account the Company's size and resources, to ensure that its antitrust compliance program, including internal controls, is tailored to the Company's individual circumstances. In undertaking such risk assessments, the Company will review its policies and procedures and make any necessary adjustments and updates based on changes in the Company's operations, circumstances, legal developments, and industry practices. The risk-based review will also address any portions of the policy that need to be changed and will communicate those changed to all employees.

5. *Training and Communication.* The Company will develop an antitrust compliance training program tailored to the Company's specific antitrust risks and will periodically update the program to ensure that it reflects the Company's current antitrust policies and reporting procedures, and legal, technical, or marketplace developments. The audience, timing, frequency, form, and content of the Company's antitrust training should be commensurate with the

Company's operations, resources, and circumstances. The Company will take reasonably appropriate steps to ensure that all relevant employees (regardless of management level or location) understand the antitrust training and when and how to report a possible antitrust violation. Training may include participation and compliance certifications as appropriate. The Company will also maintain records of training and compliance-related communications.

6. *Reporting and Guidance.* The Company will implement a reasonably effective and confidential system for communication that employees may use to seek guidance, raise concerns, or report potential antitrust violations anonymously and confidentially without fear of retaliation. The system will be widely disseminated to all relevant employees and will be designed to respond reasonably promptly to all communications.

### Attachment D: Compliance Reporting Requirements

As part of the Deferred Prosecution Agreement between EBLOCK CORPORATION (the "Company") and the United States Department of Justice, Antitrust Division ("United States") dated January 22, 2026 ("Agreement"), the Company agrees that it will report to the United States regarding remediation and implementation of the Company's compliance program, including policies, procedures, and internal controls described in Attachment C. During the Term, the Company shall conduct a review and submit a report, as described below:

1. By no later than one year from the Effective Date of the Agreement and prior to expiration of the DPA Term, the Company shall submit to the United States a written report setting forth a complete description of the Company's remediation efforts to date, its proposals reasonably designed to improve the Company's policies, procedures, and internal controls for ensuring compliance with the criminal antitrust laws. The report shall be transmitted to Ryan Tansey, Chief, Antitrust Division, U.S. Department of Justice, 450 5th St., NW, Washington, DC 20530. The Company may extend the time period for issuance of the report with prior written approval of the United States. The United States may respond to the report by requesting additional information and/or requesting that the Company take further action to improve its policies, procedures, and internal controls for ensuring compliance with the criminal antitrust laws, taking into account the Company's size and resources.

2. The report likely will include proprietary, financial, confidential, and competitive business information. Moreover, public disclosure of the report could discourage cooperation and impede

pending or potential government investigations, and thus undermine the objectives of the reporting requirement. For these reasons, among others, the report and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the parties in writing, or except to the extent that the United States determines in its sole discretion that disclosure would be in furtherance of the United States' discharge of its duties and responsibilities or is otherwise required by law.

**Attachment E: Certification**

To: United States Department of Justice Antitrust Division
    Attention: Washington Criminal Section

Re: Deferred Prosecution Agreement Disclosure Certification


    The undersigned certify, pursuant to Paragraph 21 of the Deferred Prosecution Agreement filed on January 22, 2026 in the U.S. District Court for the Central District of California, by and between the United States Department of Justice, Antitrust Division ("United States") and EBLOCK CORPORATION ("Company") dated January 22, 2026 ("Agreement"), that the undersigned are aware of the Company's disclosure obligations under Paragraph 6 of the Agreement and that the Company has disclosed to the United States any and all evidence or allegations of conduct it reasonably believes it is required to disclose pursuant to Paragraph 6 of the Agreement ("Disclosable Information"). This obligation to disclose information extends to any and all Disclosable Information that has been identified through the Company's investigation process, or other Company sources and processes. The undersigned further acknowledge and agree that the reporting requirement contained in Paragraph 6 and the representations contained in this certification constitute a significant and important component of the Agreement and the United States' determination whether the Company has satisfied its obligations under the Agreement and the Company will use its best efforts to comply with this Agreement.

    The undersigned hereby certify respectively that [he/she] is the Chief Executive Officer of the Company that [he/she] has been duly

authorized by the Company to sign this Certification on behalf of the Company.

   This Certification shall constitute a material statement and representation by the undersigned and by, on behalf of, and for the benefit of, the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and such material statement and representation shall be deemed to have been made in the Central District of California. This Certification shall also constitute a record, document, or tangible object in connection with a matter within the jurisdiction of a department and agency of the United States for purposes of 18 U.S.C. § 1519, and such record, document, or tangible object shall be deemed to have been made in the Central District of California.


Date: January 22, 2026
_____

By: _____
JASON MCCLENAHAN
President and Chief Executive Officer
EBLOCK CORPORATION